IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GEORGE DAVID SIGALA,

       Plaintiff,

v.                                                                                                                                                                                             CV 17-1126 JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff George David Sigala's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16], filed May 9, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including entry of final judgment. [Docs. 6, 7, 8]. Having studied the parties' positions, the relevant law, and the relevant portions of the Administrative Record ("*AR*"),[1] the Court grants Mr. Sigala's Motion and remands this case for further administrative fact finding.

**I.     INTRODUCTION**

Mr. Sigala claims that he cannot work for a variety of health reasons. In reaching the opposite conclusion, the administrative law judge ("ALJ") assigned to his case found that Mr. Sigala retains the residual functional capacity ("RFC") to perform work that exists in significant numbers in the national economy. In reaching this finding, the ALJ relied on the testimony of a vocational expert ("VE"), who described jobs that Mr. Sigala can allegedly perform despite his

---

[1] Documents 12 through 12-9 comprise the sealed Administrative Record. The Court cites to the Record's internal pagination, rather than CM/ECF document and page number.

1

limitations. However, two of these jobs – telemarketer and credit authorizer – appear inconsistent with Mr. Sigala's RFC, which restricts him to only "occasional" interaction with coworkers, supervisors and the general public. While the remaining job identified by the VE arguably fits within Mr. Sigala's RFC, the Court cannot confidently say that it exists in "significant numbers in the national economy" under the facts of this case. As such, the Court has no choice but to reverse the ALJ's finding of nondisability, and remand this case for further administrative fact finding.

## II. BACKGROUND

Mr. Sigala filed an application with the Social Security Administration for disability insurance benefits under Title II of the Social Security Act on October 5, 2012. *AR* at 191-192. As grounds, Mr. Sigala alleged the disabling conditions of "severe depression [and] [b]ack problems." *AR* at 81. Mr. Sigala alleged that his conditions became severe enough to keep him from working on March 10, 2008. *AR* at 191. The Administration denied Mr. Sigala's claim initially and upon reconsideration, and he requested a *de novo* hearing before an ALJ. *AR* at 80-129.

ALJ Lillian Richter held a hearing on April 28, 2016. *AR* at 31-79. On November 29, 2016, the ALJ issued an unfavorable decision, finding that Mr. Sigala has not been under a disability as defined in the Act from his alleged onset date through his last date insured. *AR* at 8-29. In response, Mr. Sigala filed a Request for Review of Hearing Decision/Order on December 5, 2019. *AR* at 189-190. After reviewing his case, the Appeals Council denied Mr. Sigala's request for review on September 18, 2017. *AR* at 1-5. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Mr. Sigala had not engaged in substantial gainful activity from his alleged onset date through his date last insured. *AR* at 13. At Step Two, she determined that Mr. Sigala had the severe impairments of "history of compression fractures in the thoracic spine, thoracic and lumbar degenerative disc disease, obstructive sleep apnea, hypertension, diabetes mellitus, obesity, major depressive disorder, [and] anxiety disorder." *AR* at 13. At Step Three, the ALJ concluded that Mr. Sigala's impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 14-15. Mr. Sigala does not challenge these findings on appeal. [*See* Doc. 16].

When a claimant does not meet a listed impairment, the ALJ must determine his RFC. 20 C.F.R. § 404.1520(e). "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. "RFC is not the *least* an

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):
> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Mr. Sigala retained the RFC to:

> lift and carry 10 pounds occasionally and 5 pounds frequently. He could stand and walk 2 hours in an 8-hour workday and sit for 6 hours in an eight-hour workday. He could occasionally climb ramps and stairs and could occasionally balance, kneel, crouch and crawl. He could not climb ropes, ladders, or scaffolds, and could not stoop. The claimant should have avoided exposure to extreme heat and cold, humidity, vibrations, unprotected heights, and moving mechanical parts. He could not work with the arms overhead but could reach frequently in all other directions. The claimant was limited to work that was primarily performed at the workstation. He could have occasional contact with supervisors, coworkers, and members of the public. He required the use of a handheld assistive device for purposes of ambulation.

*AR* at 15-16.

Employing this RFC at Steps Four and Five, and relying on the testimony of a VE, the ALJ determined that Mr. Sigala could not have returned to his past relevant work as a locksmith. *AR* at 21. However, the ALJ, relying on the testimony of the VE, found that there were jobs that exist in "significant numbers" in the national economy that Mr. Sigala could have performed despite his limitations. *AR* at 21-22. Specifically, the ALJ determined that Mr. Sigala retained the functional capacity to work as a telemarketer (160,000 jobs nationally), a medical biller (2,600 jobs nationally), or credit authorizer (8,000 jobs nationally) during the relevant time period. *AR* at 22. Accordingly, the ALJ determined that Mr. Sigala was not disabled as defined in the Social Security Act from his alleged onset date through his date last insured and denied benefits. *AR* at 22-23.

### III. LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v.*

*Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, --- F. App'x, ----, 2018 WL 6133387, at *2 (10th Cir. Nov. 23, 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)). And, importantly, the Court cannot "presume to interpose [its] judgment for that of the ALJ." *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992).

IV.     ANALYSIS

In addition to the Step Five error requiring remand, Mr. Sigala asserts that the ALJ's RFC is not based on substantial evidence because it failed to account for his chronic and severe pain. [*See generally* Doc. 16, p. 14-18]. Because the Court concludes that the ALJ erred as a matter of law by failing to resolve an actual conflict between Mr. Sigala's RFC and two of the jobs identified by the VE, and by neglecting to make the required factual finding of whether or not the jobs at issue were "significant" in Mr. Sigala's case, the Court will not address Mr. Sigala's other claims of error "because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 2018 WL 6133387, at *5 (citing *Watkins* for this proposition).

It is well settled that an ALJ must inquire about and resolve any conflicts between a VE's testimony regarding a job and the description of that job in the Dictionary of Occupational Titles. *Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (discussing Social Security Ruling 00-4p and *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)). "Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within [the ALJ's] duty [to develop the record]." *Haddock*, 196 F.3d at 1091. As such, an "ALJ must investigate and elicit a reasonable explanation for any

5

conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* "[T]he Commissioner's duty 'to identify and resolve apparent conflicts between the *Dictionary* and vocational expert testimony is not fulfilled simply by taking the vocational expert at his word that his testimony comports with the *Dictionary* when the record reveals an apparent conflict.'" *Lockwood v. Comm'r of Soc. Sec.*, --- F.3d ----, 2019 WL 286674 (2nd Cir. Jan. 23, 2019) (quoting *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018)). "Rather, [SSR 00-4p] places the onus on the Commissioner, acting through her ALJs, to affirmatively 'identify' any conflicts. *Id.* (quoting SSR 00-4p, 2000 WL 1898704, at *1).

In this case, the ALJ asked the VE if she understood that if she identified a job which conflicted with the DOT then she would need to advise of the conflict and the basis of her opinion that Mr. Sigala could nonetheless perform the identified job in light of his RFC. *See AR* at 70. And, in her decision, the ALJ stated that "[p]ursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." *AR* at 22. However, the Court, having reviewed the applicable DOT descriptions, cannot agree that the telemarketer and credit authorizer jobs identified by the VE are consistent with Mr. Sigala's RFC. The presence of an unresolved conflict between these jobs and Mr. Sigala's RFC was harmful, and ultimately requires remand. *See Poppa*, 569 F.3d at 1173.

As noted, the ALJ's RFC finding stated that Mr. Sigala "could have occasional contact with supervisors, coworkers, and members of the public." *AR* at 16. Mr. Sigala argues that both the telemarketer and credit authorizer jobs identified by the VE are inconsistent with this RFC, for numerous reasons. [*See* Doc. 16, p. 12; Doc. 19, pp. 1-5]. First, Mr. Sigala posits that the fifth digit of these two occupations' DOT numbers (5 and 6, respectively) require more than occasional

6

contact with coworkers and members of the public. [Doc. 16, p. 12 (citing DICOT 299.357-014 and DICOT 249.367-022)]. The Court is not persuaded by this argument; however, for the reasons that follow, it determines that this case must nonetheless be remanded because there is an apparent inconsistency between the DOT descriptions of these jobs and Mr. Sigala's RFC.

As the Tenth Circuit explained in *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005), "[e]ach job listed in the DOT is described by reference to various components. One component is 'Worker Functions.' The worker function labeled 'People' expresses the degree of interaction with other people that the job requires." *Id.* "The DOT rates the amount of interaction with people on a scale of 0-8, with 8 representing the lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (unpublished). Pertinent here, a people rating of 6 indicates "Speaking-Signaling: Talking with and/or signaling people to convey or exchange information. Includes giving assignments and/or directions to helpers or assistants[,]" and a people rating of 5 indicates that a job requires "Persuading: Influencing others in favor of a product, service or point of view." *Dictionary of Occupational Titles*, App. B, 1991 WL 688701. Additionally, the DOT descriptions for both jobs at issue here state that interaction with people is "significant." *See* DICOT 249.367-022, 1991 WL 672327 (credit authorizer); DICOT 299.357-014, 1991 WL 672624 (telemarketer); *compare Branchal v. Berryhill*, CV 16-0985, 2017 WL 3393963, at *5 (D.N.M. 2017) (Analyzing the people function of a job where the DOT noted that its relationship to people was "not significant.").

If the Court was considering this information in a vacuum, it would agree with Mr. Sigala that both jobs appear to exceed his RFC. However, "'people' ratings are not to be considered in a vacuum. In addition to a particular rating, the ALJ, a VE, and a reviewing court must also consider the precise requirements for each individual position." *Hart v. Berrhill*, CV 17-0636 SLP, 2018

WL 2091367, at *3 (W.D. Okla. 2018); *see Hackett*, 395 F.3d at 1175 (Discussing two jobs with people ratings of 6 but finding that the job descriptions for the two positions "indicate that contact with people is rather limited" and thereby finding them to be consistent with an RFC limitation to "avoid direct contact with the general public and have only occasional interaction with coworkers."); *see also Duncan v. Colvin*, 608 F. App'x 566, 577 (10th Cir. 2015) (unpublished) (Discussing the same jobs as *Hackett* and finding them to be consistent with an RFC limitation to "superficial contact with coworkers, supervisors, and the public."). This is because the arrangement of people functions in the DOT "is somewhat arbitrary and can be considered a hierarchy only in the most general sense." *Dictionary of Occupational Titles*, App. B, 1991 WL 688701. Thus, the Court must analyze the DOT descriptions of both jobs to determine the amount of interaction with people they require, regardless of their people ratings.

Mr. Sigala appears to recognize this in his briefing, as he summarizes the DOT descriptions for both jobs and argues that neither job is consistent with his RFC. [*See* Doc. 16, p. 12]. The DOT description for a telemarketer states that such a person:

> Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contact DRIVER, SALES ROUTE … to arrange delivery of merchandise.

DICOT 299.357-014, 1991 WL 672624. The Commissioner argues that only "two of the telemarketer's eight duties indisputably involve direct social contact with others." [Doc. 18, p. 7]. The Court finds more persuasive Mr. Sigala's argument in reply, that "this claim erroneously assumes that telemarketers divide their time during the workday equally among all eight tasks." [Doc. 19, p. 4]. Moreover, all of a telemarketer's eight duties are directed at an ultimate goal: the

solicitation of orders over the telephone. Without this common goal such a worker would have no reason to record data, refer orders to other workers (itself a social task), develop lists and type reports. The same might be said of credit authorizer, although the Court is not as convinced. Such a worker:

> Authorizes credit charges against customer's account: Receives charge slip or credit application by mail, or receives information from salespeople or merchants over telephone. Verifies credit standing of customer from information in files, and approves or disapproves credit, based on predetermined standards. May file sales slips in customer's ledger for billing purposes. May prepare credit cards or charge account plates. May keep record of customer's charges and payments and mail charge statement to customer.

DICOT 249.367-022, 1991 WL 672327. Unlike the telemarketer, much of the credit authorizer's work is directed at the behind-the-scenes work of the credit industry, as opposed to direct sales, even if telephonic. Thus, there seems to be less required interaction with people for a credit authorizer than for a telemarketer, at least based on DOT description alone.

However, if the DOT descriptions are viewed even more closely one can see that even the credit authorizer position may not fit within Mr. Sigala's RFC. Both positions require frequent talking, which courts have considered relevant to determining the level of social interaction of a job. *See* DICOT 299.357-014, 1991 WL 672624; DICOT 249.367-022, 1991 WL 672327; *compare Lane*, 643 F. App'x at 770 (Discussing how the activity of talking was "not present" in a job and therefore the job did not involve frequent or prolonged interaction with supervisors or coworkers.); *Ford v. Berryhill*, CV 16-0140 JMB, 2017 WL 3968742, at *10 (E.D. Missouri 2017) (Finding that a job that required frequent talking was inconsistent with an RFC limiting the claimant to "no more than occasional contact with coworkers and supervisors."); *Hart*, 2018 WL 2091367, at *3 (Examining the talking requirements of jobs and concluding that they did not conflict with a RFC limiting the claimant to incidental public contact where it was "not present"

9

or "occasional."). The pertinent Social Security Ruling, defines "occasionally" as "occurring from very little up to one-third of the time," and "frequent" as "occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251. Thus, an RFC that limits a claimant to occasional interaction with people is inconsistent with a job that requires frequent talking. *See Akbichi v. Berryhill*, CV 17-0838 REB, 2018 WL 1737206, at *3 (D. Colo. 2018) (unpublished) (Where the Commissioner essentially conceded that the requirement for frequent talking is inconsistent with an RFC limiting the claimant to "no more than occasional interaction with supervisors, coworkers, and the public."). In other words, the Court agrees with Mr. Sigala that these two jobs, which require frequent talking, are inconsistent with his RFC, which limits him to occasional interaction with people.

As the Commissioner points out, this still leaves the job of medical biller, which Mr. Sigala has not argued is inconsistent with his assessed residual functional capacity. [Doc. 18, p. 9]. This job, however, only represents 2,600 positions in the national economy. *AR* at 22. T, p. 22. While the Commissioner argues that such low number can satisfy the Commissioner's Step Five burden, [*see* Doc. 18, pp. 9-10 (citing *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009); *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished); and *King v. Berryhill*, CV 16-1147 KBM, 2018 WL 851358, *12-14 (D.N.M. Feb. 12, 2018) (unpublished))], this Court has very recently rejected this very argument where the number of jobs at issue was 43,000, far greater than the 2,600 jobs at issue here. *See Laney v. Berryhill*, CV 17-1062 JHR, 2019 WL 586660, at *1 (D.N.M. Feb. 12, 2019).

*Laney* followed *Roybal v. Berryhill*, CV 17-1045 JHR, 2019 WL 318387, at *4 (D.N.M. Jan. 24, 2019), which in turn followed two other cases where this Court declined to find low numbers of jobs in the national economy to be "significant" as a matter of law where the ALJ

failed to make that factual finding in her decision. *See Crockett v. Berryhill*, CV 17-0955 JHR, 2018 WL 6250602 (D.N.M. Nov. 29, 2018) (6,400 jobs); *Brandenburg v. Berryhill*, CV 17-0507 JB/JHR, Doc. 27 (D.N.M. May 25, 2018), *report and recommendation adopted*, 2018 WL 3062591 (D.N.M. June 21, 2018) (5,200 jobs). The Court so found on the basis of the principles of both horizontal and vertical stare decisis. *See* Black's Law Dictionary, 710 (Fourth Pocket Ed. 2011). "Stare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Janus v. Am. Fed'n of State, County, & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2478 (2018) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). The Commissioner in this case has not given the Court reason to alter its analysis.

As was first discussed in *Brandenburg* and was later reiterated in *Crockett*, *Roybal*, and *Laney*, the pertinent regulation does not permit an ALJ to rely on "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s.]" *See* 20 C.F.R. § 404.1566(b). Thus, an ALJ must evaluate each case on its individual merits in determining whether work exists in significant numbers in the national economy as applied to a given claimant's factual circumstances. *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). For this reason, the Tenth Circuit "has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number[.]'" *Id.* Rather, an ALJ should consider the "intrinsic" effects of a claimant's impairments when determining whether a certain number of jobs is "significant," "because they prevent the claimant from *accessing* certain jobs in the local or national economy." *Taskila v. Commissioner of Social Security*, 819 F. 3d 902, 906 (6th Cir. 2016). Thus, an ALJ must consider certain factors when determining whether the number of jobs is

11

significant, including: "the level of the claimant's disability; the reliability of the vocational expert's testimony; the distance the claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the type and availability of such work, and so on." *Trimiar*, 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), in turn quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988)).

It is undisputed that the ALJ did not complete a *Trimiar* analysis as to the 2,600 remaining medical biller jobs. This is clear error. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The remaining question is whether this Court should find the error to be harmless and recognize 2,600 jobs as significant as a matter of law. *See Evans v. Colvin*, 640 F. App'x 731, 736 (10th Cir. 2016) (unpublished); *Raymond*, 621 F.3d at 1274 n.2; *Harmon*, 168 F.3d at 292. The Court declines to do so, for the reasons stated in *Laney*. That is, the Commissioner has failed to convince the Court that the factors borrowed from the Sixth Circuit in *Trimiar* do not apply here, where the number of available jobs (2,600) does not approach the number of jobs the Tenth Circuit has found to be legally significant. *See Evans*, 640 F. App'x at 736 ("the number appears to be somewhere between 100 . . . and 152,000[.]").

The Commissioner's citations to *Rogers* and *King* do not convince the Court otherwise. As was explained in *Roybal¸ see* 2019 WL 318387, at *6, the claimant in *Rogers* did not argue that 11,000 was not a significant number. *See* 312 F. App'x at 141. Thus, the Tenth Circuit's decision did not address the issue. Additionally, the only Tenth Circuit case the Court is aware of to have addressed *Rogers*, *Evans v. Colvin*, does not rely upon it to establish the minimum number of jobs to be enough for harmless error. *See Evans*, 640 F. App'x at 736. Thus, the Commissioner has given this Court no reason to rely on *Rogers* when the Tenth Circuit was unwilling to do so. *See Ladenburger v. Colvin*, CV 15-2182 RM, 2017 WL 1352274, at *3 (D. Colo. Apr. 13, 2017)

("Defendant asserts that, in *Rogers*, the Tenth Circuit 'implicitly found' that as few as 11,000 jobs in the national economy was significant. (*Id.*) If by 'implicitly found' defendant means the Circuit did not discuss or even mention whether 11,000 jobs was a significant number, then defendant is quite accurate. If defendant means anything more, then defendant is quite wrong because whether such a number is significant is clearly not an aspect of the Circuit's analysis.").

Moreover, this Court explained why it could not follow *King* in *Roybal*. *See* 2019 WL 318387, at *6. In *King*, this Court, Magistrate Judge Karen Molzen presiding, found 47,500 jobs to be nationally significant, and applied harmless error to affirm the ALJ's conclusion that the claimant was not disabled. *King*, 2018 WL 851358, at *13. In doing so, however, Judge Molzen determined that the *Trimiar* factors do not apply to cases involving national numbers. *See id.* ("Where the focus is on national availability of jobs, however, the particularized *Trimiar* inquiry would confuse the issues."). This Court could not agree with this conclusion in *Roybal* and declines to change its view on the matter here, for one very important reason: the Sixth Circuit, from which the *Trimiar* factors were borrowed, does not draw such a distinction. *See Taskila*, 819 F.3d at 904 (quoting *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988); *see id.* at 905 ("While the frame of reference has changed, the standard of review has not. The current inquiry—focused on nationwide jobs, not just jobs in the claimant's locale—is no less claimant-specific than the one Judge Friendly adopted."). Thus, the Sixth Circuit applies the *Trimiar* factors (borrowed from *Hall*), despite the law's current focus on jobs in the national economy.

Therefore, neither *Rogers* nor *King* convince this Court that it should change its approach in this case. The significant numbers inquiry is a fact question reviewed for substantial evidence, not a legal question to be reviewed as a matter of statutory interpretation. *Taskila*, 819 F.3d at 905. Thus, "[t]he Tenth Circuit has emphasized that 'the issue of numerical significance entails many

13

fact-specific considerations requiring individualized evaluation' and, as such, 'the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.'" *Padilla v. Berryhill*, CV 16-0106 KK, 2017 WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004)). Therefore, unless the number of jobs in a case reaches levels affirmed by the Tenth Circuit as significant as a matter of law, or the court or the Administration change the current regulations to reflect a lower number, this Court declines to apply harmless error in the absence of a proper *Trimiar* analysis.

As the Tenth Circuit has stated, "each case should be evaluated on its individual merits." *Trimiar*, 966 F.2d at 1330. Therefore, "because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical significance requirement, [the Court] cannot properly review this issue." *Rhodes v. Barnhart*, 117 F. App'x 622, 532 (10th Cir. 2004) (unpublished); *see Allen*, 357 F.3d at 1144 ("*Trimiar's* insistence on an antecedent exercise of judgment by the ALJ is not novel. On the contrary, it is consistent with, if not compelled by, our broader recognition that as a court acting within the confines of its administrative review authority, we are empowered only to review the ALJ's decision for substantial evidence and … we are not in a position to draw factual conclusions on behalf of the ALJ."). Absent the proper analysis by the ALJ, this Court cannot confidently say that 2,600 jobs, spread across several regions of the country, are significant as a matter of fact, and the Court declines the Commissioner's invitation to find them significant as a matter of law.

## V. CONCLUSION

"VE testimony that conflicts with the DOT does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the

economy a claimant can perform." *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014). As such, in cases like this, where VE testimony conflicts with the DOT, the Commissioner must identify alternative jobs that exist in significant numbers in the national economy in order to stave off reversal. The ALJ did not do so in this case, and until the Administration or a higher court draws a definitive line establishing the number of national jobs that is "significant" as a matter of law, administrative law judges in this circuit must adhere to the principles set forth in *Trimiar* and engage in the factoral analysis it sets forth when the number of national jobs at issue is significantly lower than 152,000. Because the ALJ did not comply with *Trimiar* here, the Court must reverse and remand this case for further administrative proceedings.

Wherefore, IT IS THEREFORE ORDERED that Plaintiff George David Sigala's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 16], is GRANTED and the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this decision.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent